PEARSON et al. v. WILLIAMS, Com'r.

(Circuit Court of Appeals, Second Circuit.  February 24, 1905.)

No. 129.

IMMIGRANTS—RIGHT TO LAND—BOARD OF INQUIRY—DETERMINATION—CON-
CLUSIVENESS.

   Act Cong. March 3, 1903, c. 1012, § 21, 32 Stat. 1218 [U. S. Comp. St.
Supp. 1903, p. 180], provides that, if the Secretary of the Treasury shall
be satisfied that an alien has been found in the United States in violation
of the act, he may cause such alien, within three years after landing, to
be taken in custody and deported.  Section 24 (32 Stat. 1219 [U. S. Comp.
St. Supp. 1903, p. 181]) declares that any alien who may appear to the
examining immigrant inspector at the port of arrival not to be entitled to
land shall be detained for examination by a board of special inquiry.
Section 25 (32 Stat. 1220 [U. S. Comp. St. Supp. 1903, p. 182]) provides
that such board shall consist of three immigrant inspectors selected with
the approval of the Secretary of the Treasury, and that the decision of
any two members of the board shall be final, but that the alien or any
dissenting member of the board may appeal to the Secretary of the
Treasury, whose decision shall be final.  *Held,* that a decision of a board
of inquiry that an alien was not a contract laborer and was enti-
tled to land was not res adjudicata of such question, and did not pre-
vent the Secretary of Commerce and Labor, on whom the powers formally
vested in the Secretary of the Treasury were conferred by Act Cong.
Feb. 14, 1903, c. 552, 32 Stat. 825 [U. S. Comp. St. Supp. 1903, p. 41], from
instituting new proceedings within a year thereafter for a retrial of such
question.

   Coxe, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the
Southern District of New York.

W. M. Byrne, for appellant.
Eugene Treadwell, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge.  This is an appeal by the commis-
sioner of immigration at the port of New York from an order in
habeas corpus discharging the appellees from his custody.  The
appellees were aliens in the custody of the commissioner under a
warrant of the Secretary of Commerce and Labor.  They arrived
at the port of New York about February 1, 1904, and were de-
tained for examination before a board of special inquiry to ascer-
tain whether they had come to this country in violation of law.
The board, after hearing evidence, decided in their favor, and they
were by its unanimous decision allowed to land.  Thereafter, and
on or about March 21, 1904, the Secretary of Commerce and Labor
issued a warrant under which they were held in custody by the
appellant, pending an inqury to ascertain whether they were here
in violation of law, as alien laborers who had come here under a
previous contract to perform service.  All the proceedings were
had pursuant to Act Cong. March 3, 1903, c. 1012, 32 Stat. 1213
[U. S. Comp. St. Supp. 1903, p. 170], entitled "An act to regulate the
immigration of aliens into the United States."  The pertinent pro-
visions of this act are these:  Section 21 (32 Stat. 1218 [U. S. Comp.

St. Supp. 1903, p. 180]) provides that, in case the Secretary of the Treasury shall be satisfied that an alien has been found in the United States in violation of the act, he may cause such alien, within a period of three years after landing, to be taken into custody and deported. Section 24 (32 Stat. 1219 [U. S. Comp. St. Supp. 1903, p. 181]) provides that any alien who may appear to the examining immigrant inspector at the port of arrival not to be clearly and beyond doubt entitled to land shall be detained for examination in relation thereto by a board of special inquiry. Section 25 (32 Stat. 1220 [U. S. Comp. St. Supp. 1903, p. 182]) provides that such board shall consist of three persons to be selected by the Commissioner General of Immigration from the immigrant inspectors in his service, with the approval of the Secretary of the Treasury, and shall have authority to determine whether an alien who has been duly held shall be allowed to land or be deported, and that the decision of any two members of the board shall prevail and be final, but that either the alien or any dissenting member of said board may appeal to the Secretary of the Treasury, whose decision shall be final.

The powers conferred by these provisions upon the Secretary of the Treasury were subsequently vested in the Secretary of Commerce and Labor. Act Feb. 14, 1903, c. 552, 32 Stat. 825 [U. S. Comp. St. Supp. 1903, p. 41].

It is insisted for the appellees, and this contention prevailed in the court below, that the decision of the board of special inquiry, no appeal from it having been taken, was final. The examination before that board was addressed to the inquiry whether the aliens had come to this country, in violation of law, as contract laborers; and it is urged that the decision of the board is res adjudicata upon that question, and conclusive of their right to enter and remain.

We are of the opinion that the decision of the board has no other effect than a determination that the alien shall be permitted to land; that its functions are confined to this initial inquiry; and that it is competent for the Secretary of Commerce and Labor at any subsequent time during the three years, upon becoming satisfied that the alien who has been allowed to enter is notwithstanding here in violation of law, to exercise the power of deportation. The board is a subordinate tribunal whose powers extend merely to the decision of the particular inquiry committed to it, and any adjudication beyond this, even if it were to be regarded as a judicial decision, would be coram non judice.

The existing provisions of law are substitutes for provisions of the earlier acts regulating the immigration of aliens. By section 8 of the act of March 3, 1891 (26 Stat. 1085, c. 551 [U. S. Comp. St. 1901, p. 1298]), it was committed to the inspection officers at every place of arrival to detain alien immigrants for examination. They were authorized to administer oaths and take and consider testimony touching the right of such aliens to enter the United States, and it was provided that all decisions made by them "or their assistants" touching the right of any alien to land, when adverse to such right, should be final, unless an appeal should be

taken to the superintendent of immigration, and that his action should be subject to review by the Secretary of the Treasury. By section 11 (26 Stat. 1086 [U. S. Comp. St. 1901, p. 1299]) of that act it was provided that any alien who should come into the United States in violation of law might be returned, as by law provided, at any time within one year thereafter. By an act of October 19, 1888 (25 Stat. 565, c. 1210), the Secretary of the Treasury had been authorized, in case he should be satisfied that an immigrant had been allowed to land contrary to the law prohibiting the immigration of laborers under previous contract, to cause the immigrant, within the period of one year after landing or entering, to be taken into custody and returned to the country whence he came. Speaking of these enactments in Japanese Immigrant Case, 189 U. S. 99, 23 Sup. Ct. 611, 47 L. Ed. 721, the Supreme Court used this language:

"Taking all its enactments together, it is clear that Congress did not intend that the mere admission of an alien, or his mere entering the country, should place him at all times thereafter entirely beyond the control or authority of the executive officers of the government. On the contrary, if the Secretary of the Treasury became satisfied that the immigrant had been allowed to land contrary to the prohibition of that law, then he could, at any time within a year after the landing, cause the immigrant to be taken into custody and deported. The immigrant must be taken to have entered subject to the condition that he might be sent out of the country by order, of the proper executive officers if within a year he was found to have been wrongfully admitted into it, or illegally entered the United States."

By the present act the time within which this power could be exercised by the Secretary of the Treasury was extended to the period of three years after the landing or entering of the immigrant, and was subsequently transferred to the Secretary of Commerce and Labor. It is the plain purpose of the drastic legislation embodied in the immigrant exclusion acts to provide every possible safeguard against the abuse by aliens of the prohibited classes of the privilege of coming to or remaining within this country. There is no repugnance between the power conferred upon the board of special inquiry and that conferred upon the Secretary. The former is to be exercised summarily, and while the immigrant is under detention awaiting the result of the inquiry. The board has no authority to compel the attendance of witnesses, and must decide upon such evidence as is at hand or is readily accessible. Of necessity, its decisions do not have the quality of even approximate infallibility. It is hardly conceivable that Congress should have intended that such a decision should be a final determination of the status of the alien. Manifestly Congress intended not only that the Secretary might review the question whether he should be allowed to enter upon an appeal from the decision, but also that at any time within three years the Secretary should have the power to reconsider the broader question of the right of the alien to remain, and, upon reaching an adverse conclusion, to order his deportation. This is not a power to be exercised arbitrarily, and deportation is to be ordered only after giving the alien an opportunity to be heard upon the questions involving his privilege. In the present case, before deporta-

tion of the aliens had been ordered, they were heard; and it is to be presumed that the power of deportation would not have been exercised unless, after a fair hearing, the Secretary had become convinced that they were here in violation of law.

The order is reversed, with instructions to remand petitioners to the custody of the respondent.

COXE, Circuit Judge, dissents.